Filed 4/16/25  P. v. Rios CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUAN PABLO RIOS,<br><br>        Defendant and Appellant. | B335207<br><br>(Los Angeles County<br>Super. Ct. No. BA109070) |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Affirmed.

Janice Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, a jury convicted appellant Juan Rios of two counts of first degree murder, two counts of robbery, and found true the special circumstance allegation that the murders were committed during the commission of a robbery. A different panel of this court affirmed these convictions in 1998 in a nonpublished opinion, *People v. Martinez* (Nov. 12, 1998, B113156) (*Martinez*). In 2019, appellant filed his first petition for resentencing under former Penal Code section 1170.95.[1] The trial court denied the petition, finding that appellant was ineligible for relief as a matter of law because the jury's true finding on the special circumstance allegation included a finding that appellant was a major participant in the underlying robbery who acted with reckless indifference to human life. In 2020, the trial court denied appellant's second resentencing petition at the prima facie stage, following appointment of counsel and briefing, again relying on the jury's special circumstance finding. On appeal, a different panel of this court concluded that nothing in the record of conviction established appellant's ineligibility as a matter of law. (*People v. Rios* (Jan. 6, 2022, B310532) [nonpub. opn.].) We therefore reversed the order and remanded with directions to the trial court to issue an order to show cause and proceed consistent with section 1172.6, subdivision (d).

On remand, the parties submitted briefing and the trial court held an evidentiary hearing. The court denied the resentencing petition as to one of the murder counts, finding that appellant was a major participant in the underlying felony (the robberies) and acted with reckless indifference to human life. The court granted resentencing as to the second murder.

Appellant appeals from the denial of resentencing for the first murder. He contends that the court erred by failing to consider his youth as a relevant factor to resentencing. We find no error and affirm.

## BACKGROUND

I. *Factual Background*

The underlying facts as detailed in our previous opinions are not disputed by the parties. Indeed, both parties relied on our prior opinions for

---

[1] Effective June 30, 2022, former section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) All further undesignated statutory references are to the Penal Code.

the factual summaries in their appellate briefs.  We summarize that evidence here, while noting that the trial court properly relied on the record from appellant's trial.  (See § 1172.6, subd. (d)(3).)

Appellant and co-defendants Javier Martinez, Marvin Zarceno, and Jose Gomez were members of the Crazy Riders gang.  On November 4, 1995, Zarceno and another Crazy Riders gang member, Richard Startz, entered a clothing store owned by E.P. and her husband R.L.[2]  After Zarceno and Startz got into an argument with R.L., Startz lifted his shirt, displaying a silver semiautomatic gun.  Zarceno left the store to call his "homeboy[s]," and Startz told R.L. he would kill him.  (*Martinez, supra,* B113156.)

Zarceno returned to the store with appellant, Martinez, Gomez, and several other Crazy Riders, including two men identified as "El Guero," and "Little Mister."  Martinez pushed E.P., and appellant pushed and kicked her. El Guero went behind the counter and disconnected the telephone.  He also rummaged through E.P.'s purse and removed $700.  (*Martinez, supra,* B113156.)

While inside the store, Martinez asked Little Mister for his gun. Martinez held the gun directly in front of R.L.'s forehead and hit R.L. in the mouth. Martinez said, "I'm going to kill you." He then hit R.L. a second time and repeated, "I'm going to kill you. . . .  Here the Crazy Riders are in charge. [¶] This is our barrio." El Guero told Martinez to kill R.L.  When R.L. asked E.P. to call the police, appellant and several other Crazy Riders grabbed and held her. (*Martinez, supra,* B113156.)

Martinez returned the gun to Little Mister saying, "Do what you have to do. Do it for the barrio."  At that point, R.L.'s brother, J.H., entered the store and asked what was happening. El Guero told Little Mister to kill him. Appellant, El Lobo, and Startz each said, "Kill him. Kill him." Appellant also said that the neighborhood was a Crazy Rider neighborhood and had to be respected.  (*Martinez, supra,* B113156.)

Little Mister fatally shot J.H. three or four times.  The men holding E.P. released her and the Crazy Riders ran out of the store.  (*Martinez, supra,*

---

[2]     We refer to the victims using initials to protect their privacy. (See Cal. Rules of Court, rule 8.90(b)(4).)

B113156.)  Martinez retrieved the gun from Little Mister.  Outside the store, Martinez shot and killed bystander S.D.  (*Ibid*.)

At trial, a gang expert testified that the Crazy Riders controlled their neighborhood, or barrio, through their numbers.  According to him, the gang and its members strived to gain respect through fear and intimidation, which was generated by robbing and assaulting neighborhood residents.  The expert testified that if a gang member felt disrespected, the gang might return and "payback" the offender or retaliate, including through assault, robbery, threats, and intimidation.  (*Martinez, supra,* B113156.)

## II.    *Procedural History*

### A.    *Trial and Direct Appeal*

A jury convicted appellant, Gomez, Zarceno, and Martinez of two counts of first degree murder (§ 187, subd. (a)) and two counts of second degree robbery (§ 211).  As to both murders, the jury found true the allegation that a principal was armed with a firearm, as well as the special circumstance allegations that the murders were committed during the commission of a robbery (§ 190.2, subd. (a)(17)[3] and that the defendants were guilty of more than one count of murder (§ 190.2, subd. (a)(3)).  The court sentenced appellant to two concurrent terms of life imprisonment without the possibility of parole for the murders, plus one year for the firearm enhancement, as well as two concurrent three-year terms for the robberies.

We affirmed appellant's convictions on appeal.  This court found sufficient evidence for the jury to conclude that appellant and the other Crazy Riders accompanied Zarceno back to the store with the intent to commit a robbery, and that the murders were committed during the perpetration of that robbery.  (*Martinez, supra,* B113156.)  We also found appellant "played a major role in the underlying robbery," by enabling the robbery to occur.  We noted the evidence that appellant physically restrained E.P., preventing her from stopping El Guero as he rummaged through her purse and extracted the money, and also that appellant prevented E.P. from calling the police, which "helped ensure the success of the robbery and the murder."  (*Ibid*.)  Appellant

---

[3]    The robbery-murder special circumstance allegation required the jury to find that appellant was a "major participant" in the robbery and acted with "reckless indifference" to human life. (§ 190.2, subd. (d).)

4

also "ordered Little Mister to 'kill him,' and . . . reiterated Martinez's statement that the Crazy Riders deserved respect in the neighborhood," and then failed to aid J.H. after he was shot. (*Ibid.*) As such, we concluded that appellant "facilitated the robbery and specifically urged a killing, thereby demonstrating [he was a] major participant [ ] in the robbery and, at a minimum, demonstrated a reckless indifference to human life." (*Ibid.*) We therefore found that there was sufficient evidence to sustain appellant's conviction for the special circumstance murder of J.H. as an aider and abettor. (*Martinez, supra,* B113156.)

Regarding the murder of the bystander, S.D., we agreed with appellant that the evidence was insufficient to support a conviction as a direct aider and abettor to the murder, citing the evidence that appellant might have already left the scene. But we affirmed the conviction, reasoning that, "in finding the special circumstance of robbery-murder true as to the appellant[ ], the jury concomitantly found the elements of felony murder to be true." (*Martinez, supra*, B113156.)

### B.    *First and Second Petitions for Resentencing*

In 2019, appellant filed a petition for resentencing under former section 1170.95, asserting that he was convicted of first degree felony murder, could not now be convicted of murder because of changes to section 189, and that there had "been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life." The court summarily denied the petition.

Appellant filed a second petition for resentencing in 2020. Following appointment of counsel and submission of briefs by both parties, the court found that appellant was ineligible for relief as a matter of law. On appeal, this court reversed, finding that the jury's robbery-murder special circumstances finding did not preclude eligibility for resentencing at the prima facie stage, because that finding was made before the Supreme Court clarified the requirement of section 190.2 in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).[4] We therefore

---

[4]    Our Supreme Court subsequently affirmed that a jury's finding prior to *Banks* and *Clark* does not preclude resentencing relief at the prima facie stage. (See *People v. Strong* (2022) 13 Cal.5th 698, 710.)

remanded the matter for issuance of an order to show cause and an evidentiary hearing.

### C. *Evidentiary Hearing*

On remand, the trial court issued an order to show cause and set the matter for further hearing. Both parties filed additional briefs. In appellant's "eligibility brief," he argued that he was entitled to relief because he was not the actual killer, was not a major participant in the underlying felony, and did not act with reckless disregard for human life. He argued that the evidence showed he did not bring or use a weapon during the robbery, did not take money from the store, and that his "only possible involvement" in the robbery was "allegedly restraining the shopkeeper's wife for 8 to 10 seconds," as well as allegedly yelling "kill him," along with two other men, before the first victim was shot.

In addition, appellant questioned the strength of the evidence that he encouraged the shooter. He denied making the alleged statements and argued that the "scene of the shooting was pure chaos," and as a result, the witness could not reasonably determine who was speaking.

Appellant noted that he was 20 years old at the time of the crimes. He argued at length that due to his youth the court "should admit evidence regarding juvenile brain development generally and petitioner's development specifically because it is relevant to his culpability as an accomplice to felony murder." He cited multiple studies supporting his argument that adolescents are "physiologically predisposed to risky, impulsive decision-making." Citing *In re Moore* (2021) 68 Cal.App.5th 434, 454 (*Moore*), he contended that the court was required to consider evidence of his youth as a relevant factor to determining his mental state.

The People submitted an evidentiary hearing brief, arguing that the evidence at trial established that appellant was a major participant in the robberies, acted with reckless indifference to human life, and directly aided and abetted the murders with malice aforethought. The People requested that the court take judicial notice of the record from appellant's trial and the appellate opinion in the direct appeal.

The court held the evidentiary hearing on August 29, 2023. Both parties submitted based on their briefs. The court first indicated it had

6

"reviewed all the briefs that have been filed in this matter." The court noted (incorrectly) that it had "previously granted resentencing relief" on count two, the murder of victim S.D., and that the present hearing concerned only count one, the murder of victim J.H. The court then reviewed the facts of the case, concluding that "the evidence reflects that the petitioner's conduct demonstrated that he was a major participant in the robbery who acted with reckless indifference to human life. [¶] The evidence shows that the petitioner played a major role in the underlying robbery by enabling the robbery to occur. [¶] He played a part in physically restraining [owner E.P.], preventing her from stopping another gang member, … El Guero, as he rummaged through her purse and extracted money, and also that the petitioner prevented [E.P.] from calling the police, which, in the end, helped to ensure the success of the robbery and the ultimate murder. [¶] The petitioner also ordered another member of his gang, 'Little Mister,' to shoot and kill victim [J.H.], while reiterating...that the Crazy Rider gang deserved respect in the neighborhood. [¶] The petitioner then failed to aid victim [J.H.] after he was shot. [¶] Consequently, it is apparent that the petitioner facilitated the robbery and specifically urged a killing, thereby demonstrating that he was a major participant of the robbery who acted with reckless indifference to human life."

The court also analyzed the factors set forth in *Banks* and *Clark*, concluding that under those factors, appellant would not qualify for resentencing relief. First, the court considered as a factor whether appellant "lacked a role in the planning of the criminal enterprise that led to the death in question." The court found, "from the overall evidence, it is apparent that the petitioner, as a member of the Crazy Rider gang, was part of a plan to return to the store in question to lend support to two of his gang members who had been at the store earlier and intimidated the owners while attempting to steal merchandise. [¶] By his conduct of physically restraining [owner E.P.], preventing her from stopping another gang member from rummaging through her purse for the purpose of extracting money, as well as preventing her from calling the police, that the petitioner not only enabled the robbery to occur but also, as noted by the Court of Appeal, 'helped ensure the success of the robbery and the murder.' [¶] As a member of the gang, the

7

petitioner took part in executing that plan devised by members of the Crazy Rider gang and by his conduct ensured the plan's success."

Second, the court considered the role appellant played "in supplying and using a lethal weapon." The court found, "[a]lthough it is unknown from the facts whether the petitioner supplied the firearm used . . . to commit the murder, it can be surmised from the evidence that he actually urged a member of his gang to shoot and kill one of the store owners while reiterating that the Crazy Rider gang deserved respect in the neighborhood. [¶] The trial testimony of . . . [the] gang expert reflects that the Crazy Rider gang controlled the neighborhood by numbers. The gang and its numbers strived to gain respect through fear and intimidation, which was generated by robbing and assaulting neighborhood residents. [¶] He testified that if a gang member felt disrespected, they might return and pay back the offender or retaliate, including through assault, robbery, threats, and intimidation. [¶] Consequently, as a member of the gang, the petitioner was well aware of the schemes, plans, and/or philosophy held and executed by the gang to ensure intimidation and respect."

For the third factor, the court examined appellant's awareness "of the particular dangers posed by the nature of the crime and/or awareness of the weapons used." Based on the same findings, the court concluded that appellant, "as a member of the Crazy Rider gang, aided by a specific scheme for instilling fear and intimidation in the neighborhood to gain respect, including committing various crimes, should have been aware of the particular dangers posed."

Fourth, the court looked at whether appellant was "present at the scene of the killing, in a position to facilitate or prevent the actual murder, and what did the petitioner do after lethal force was used?" The court reasoned, "[o[nce again . . . the petitioner was indeed present at the scene of the killing and by his conduct helped ensure the success of the robbery and the murder that ultimately occurred inside of the store. . . . [¶] In fact, as previously noted, the petitioner urged his fellow gang member to shoot and kill the victim. Moreover, following the use of lethal force . . . the petitioner did absolutely nothing to render aid to the victim."

The court thus concluded that "even under the Supreme Court parameters set forth in the post-<u>Banks</u> and -<u>Clark</u> cases, the petitioner's conduct rose to the level of being a major participant who acted with reckless indifference to human life." The court then indicated that "counsel may augment the record if they wish," but both parties declined. The court accordingly denied the petition.

Subsequently, the court clarified that it had intended to deny resentencing for appellant only as to count one, the murder of J.H. The court granted resentencing relief as to count two, the murder of S.D. The court also vacated the jury's finding as to multiple murders.

Appellant timely appealed.

## DISCUSSION

**I.** *Section 1172.6*

Effective January 1, 2019, the Legislature "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*), quoting Stats. 2018, ch. 1015, § 1(f).) As amended, section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189 now provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subds. (e)(1)-(3); accord, *People v. Wilson* (2023) 14 Cal.5th 839, 868-869.)

A person convicted of murder or attempted murder under a now-invalid theory may petition the trial court under section 1172.6 to vacate the conviction and be resentenced on any remaining counts. (§ 1172.6, subd. (a).)

9

If the trial court determines the petitioner has made a prima facie showing of eligibility for relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under current law.  (§ 1172.6, subds. (c), (d)(3)). At the evidentiary hearing, the trial court "act[s] as an independent fact[ ]finder" and may consider evidence admitted at any prior hearing or trial that is admissible under current law, or any new or additional evidence submitted by the parties.  (§ 1172.6, subd. (d)(3).)  The trial court "must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard. . . . " (*People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*).)  "'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*People v. Wilson, supra*, 14 Cal.5th at p. 869, quoting § 1172.6, subd. (d)(3).)

## II.    Standard of Review

We review the trial court's findings after a section 1172.6, subdivision (d)(3), evidentiary hearing for substantial evidence.  (*Clements*, *supra*, 75 Cal.App.5th at p. 298; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 (*Mitchell*).)  Under this standard, we "'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.'" (*Clements*, *supra*, at p. 298.) Substantial evidence includes both circumstantial evidence and reasonable inferences drawn therefrom  (*People v. Brooks* (2017) 3 Cal.5th 1, 57), and we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence.  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.) We do not resolve credibility issues or conflicts in the evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

III. *Analysis*

It is undisputed that appellant was not the actual shooter; instead, the parties agree that his eligibility for resentencing turns on whether he was a major participant in the underlying robberies and acted with reckless indifference to human life. Appellant contends that the court failed to consider his youth at the time of the crimes as a relevant factor to determine whether he acted with reckless indifference. We are not persuaded.

Reckless indifference to human life "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) Reckless indifference to human life has a subjective component, under which "'[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.'" (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) There is also an objective element, requiring that "'[t]he risk [of death] must be of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" (*Ibid*.)

Whether a defendant acted with reckless indifference to human life depends on the totality of the circumstances. (*Scoggins, supra*, 9 Cal.5th at p. 677.) As enumerated in *Clark*, the relevant factors include, "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, at p. 677, citing *Clark, supra*, 63 Cal.4th at pp. 618-623.) None of these considerations is necessary, nor is any necessarily sufficient, to establish reckless indifference. (*Scoggins, supra*, at p. 677.) Ultimately, the determination of whether a defendant

acted with reckless indifference to human life is "a fact-intensive, individualized inquiry." (*Id*. at p. 683.)

Respondent does not dispute that appellant's age—20 years old at the time of the crimes—could be relevant to determining whether he acted with reckless indifference to human life. Indeed, as early as February 2021, appellate courts recognized that a defendant's age at the time of a crime was a relevant part of the inquiry. (See *People v. Harris* (2021) 60 Cal.App.5th 939, 959 (*Harris*) [citing "the science relating to adolescent brain development" as relevant to whether the defendant "was actually aware" of dangers posed by the crime].) "Recent appellate cases have concluded nearly uniformly that a defendant's youth—defined, roughly, as being 25 years of age and younger—is a factor within the totality of circumstances relevant to the requisite mental state for felony murder." (*People v. Pittman* (2023) 96 Cal.App.5th 400, 416 [collecting cases].)

The relevance of youth was thus well established by the time of the August 2023 evidentiary hearing on appellant's section 1172.6 petition. In fact, appellant's counsel devoted an entire section of appellant's eligibility brief to detailing the ways that his youthful age could undercut a finding that he acted with reckless disregard for human life. Nevertheless, appellant points to the fact that the trial court did not expressly discuss any consideration of his age, despite its detailed analysis of other relevant factors, and argues that this silence demonstrates that the court "did not consider appellant's youth in calculating appellant's eligibility for resentencing."

"[W]e presume the trial court followed the law in exercising its duties and duly considered the evidence presented to it." (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092 (*Jones*).) This presumption derives from the "fundamental principle of appellate procedure," that "a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence." (*Jones, supra*, 86 Cal.App.5th at p. 1092.)

Appellant argues that we should diverge from the usual treatment here, citing several cases in which the appellate court remanded because the trial court did not expressly consider the defendant's age in a resentencing petition. Those cases are factually distinguishable. In each instance, the case was remanded because the issue of youth was not sufficiently presented to the trial court, either because the parties failed to raise it or because of the recency of decisions concluding that youth was a relevant consideration, or both. (See *Pittman, supra*, 96 Cal.App.5th at pp. 416-417 [remand warranted where no discussion of youth during trial court proceedings and the court issued its order prior to the relevant appellate cases]; *Jones, supra,* 86 Cal.App.5th at p. 1092 [the trial court issued its decision omitting discussion of youth shortly after *Harris* was decided, "without any remonstrance by defense counsel"].)

Neither circumstance is present here. Appellant's counsel argued at length in his brief that the court should consider appellant's age as relevant to his mental state. The court expressly stated at the hearing that it had reviewed all of the briefing. Additionally, all of the relevant cases appellant now cites (and cited below) were decided well before appellant's evidentiary hearing in August 2023. Although the court did not expressly discuss appellant's age in issuing its final ruling on the petition, it was not required to do so, and there is no affirmative indication it refused to consider the point. We thus presume the court properly considered appellant's youth as part of its analysis. Appellant's speculation to the contrary does not defeat that presumption.

Moreover, appellant's youth alone is not dispositive (*In re Harper* (2022) 76 Cal.App.5th 450, 470), and "[t]he fact of youth cannot overwhelm all other factors." (*People v. Mitchell, supra*, 81 Cal.App.5th at p. 595.) Here, the trial court performed a thorough inquiry, and its findings were well supported by substantial evidence. As detailed by the court, the evidence showed that appellant facilitated the robberies and the murder of J.H., including by restraining E.P. and preventing her from calling the police and by encouraging the shooter. He also failed to render aid to the victim. We therefore find no error in the trial court's denial of appellant's petition for resentencing.

**DISPOSITION**

The order denying appellant's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

ZUKIN, ACTING P. J.

DAUM, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.